
Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 8114 | **DATE** | 9/4/2003 |
| **CASE TITLE** | REBECCA ANGEVINE vs. WATERSAVER FAUCET COMPANY | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants Defendant, WaterSaver Faucet Company's motion for summary judgment as to Plaintiff, Rebecca Angevine's Title VII claims [18-1]. The Court grants in part and denies in part Angevine's motion to strike [25-1]. The Court grants in part and denies in part WaterSaver's motion to strike. The Court hereby terminates this case. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | SEP 12 2003 date docketed | 32 |
| | Notified counsel by telephone. | | docketing deputy initials | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK 03 SEP 11 PM 4:24 FILED | date mailed notice | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 1 2 2003

| | | |
|---|---|---|
| REBECCA ANGEVINE,<br><br>Plaintiff,<br><br>v.<br><br>WATERSAVER FAUCET COMPANY,<br><br>Defendant. | ) | No. 02 C 8114<br><br>Judge Ronald A. Guzman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Rebecca Angevine ("Angevine") has filed a Title VII action against Defendant WaterSaver Faucet Company ("WaterSaver"), her former employer, alleging hostile environment sexual harassment, constructive discharge and retaliation. 42 U.S.C. § 2000e *et seq.* (1994). WaterSaver has moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons provided in this Memorandum Opinion and Order, the Court grants WaterSaver's motion.

**BACKGROUND FACTS**

The following facts, unless otherwise noted, are undisputed. Rebecca Angevine was hired by WaterSaver as a customer service representative on March 11, 1996. (Def.'s LR56.1(a) ¶ 4.) During her tenure with the Defendant, Angevine received satisfactory performance reviews and salary increases. (*Id.* ¶ 7.) In 2001, WaterSaver expanded Angevine's duties, promoting her to customer services coordinator. (*Id.* ¶ 8.) Angevine served customers of WaterSaver located principally on the East coast and in the Midwest, a territory also supported by Regional Sales Manager Mike Straughn ("Straughn"). The





parties dispute whether Straughn had any supervisory responsibility over Angevine. (Def.'s LR56.1(a) ¶ 11; Pl.'s LR56.1(b)(3)(A) ¶ 11.)

In March 2002, Angeveine, WaterSaver CEO, Steven Kersten ("Kersten") and outside sales staff Peter Kearns ("Kearns"), Curt Evans ("Evans") and Straughn attended the PittCon trade show in New Orleans. (Def.'s LR56.1(a) ¶ 16.) During the show, Angevine had dinner with Doug Pretsch ("Prestch"), a WaterSaver customer. (Def.'s LR56.1(a) ¶ 17.) At the dinner Pretsch disclosed to Angevine that at a prior trade show, during discussion of Angevine's sexual preference, that a bet was made between he and Straughn that Pretsch "could not get into [Plaintiff's] pants and could not eat [her] pussy." (Def.'s LR56.1(a) ¶ 18; Pl.'s LR56.1(b)(3)(A) ¶ 18.) On seeing Angevine's upset reaction to this disclosure, Pretsch apologized. (Def.'s LR56.1(a) ¶ 19.)

The two finished dinner and proceeded to Bourbon Street until the early morning hours. (*Id.* ¶ 20.) While on Bourbon Street, Angevine, and Pretsch came upon a building balcony where women were showing their breasts and lifting their skirts at the entreaty of the surrounding men. (*Id.* ¶ 22.) In response to this situation, Angevine yelled out in the presence of WaterSaver customers that she wanted to "[see] some dick." (*Id.* ¶¶ 22, 37.)

Angevine returned to Chicago without confronting Straughn about the bet. Angevine admitted that the bet was not made in her presence or at her workplace. (*Id.* ¶ 25.) Her knowledge of its existence was only through WaterSaver customer Doug Pretsch. (*Id.*) Shortly after returning, Angevine spoke to Don Schoen ("Schoen") a former WaterSaver Vice President, currently serving in a consulting capacity for the company, about the bet. (*Id.* ¶ 26.) Following her discussion with Schoen, Angevine took her concerns to WaterSaver CEO, Kersten. (Def.'s LR56.1(a) ¶ 27.) In that meeting

Angevine told Kersten about the alleged bet and who Pretsch indicated was present when it was made. (PL.'s LR56.1(b)(3)(A) ¶ 28.) Kersten indicated to Angevine he would contact a management association WaterSaver belonged to and seek advice on handling the matter. (Def.'s LR56.1(a) ¶ 29.) The parties dispute whether Kersten also said that Straughn had been inappropriate on other occasions and was lacking in social manners. (Def.'s Resp. Pl.'s LR56.1(b)(3)(A) ¶ 79.)

Kersten conducted an investigation into the complaint raised by Angevine. (Def.'s LR56.1(a) ¶ 30.) He contacted Pretsch, Kearns, Straughn and Brian Kennedy, another WaterSaver customer, to discuss what took place with respect to Angevine's claim. (*Id.* ¶ 31.) Angevine noted Kersten did not speak with one other customer present at the time, Mike Cook. (Pl.'s LR56.1(b)(3)(A) ¶ 31.) The investigation confirmed the making of the bet, although the parties dispute whether it was instigated by Straughn or Pretsch. (Def.'s LR56.1(a) ¶¶ 33, 34; Pl.'s LR56.1(b)(3)(A) ¶ 33, 34.)

Kersten concluded on completion of his investigation that Straughn's participation in the bet was done to placate an intoxicated customer, no sexual harassment of Angevine occurred, and thus, no formal discipline of Straughn was warranted. (Def.'s LR 56.1(a) ¶¶ 35, 38, 39.) Angevine disputes the conclusions that Straughn's actions were non-discriminatory and appropriate. (Pl.s' LR56.1(b)(3)(A) ¶ 39.) With regard to Angevine's behavior with customers on Bourbon Street, Kersten did feel it was inappropriate in her capacity representing WaterSaver. He spoke with her about it, but took no formal disciplinary action against her for this conduct. (Def.'s LR56.1(a) ¶ 40, 42.) Angevine apologized and offered to resign. (*Id.* ¶ 41.) Kersten accepted her apology and refused to accept her resignation. (*Id.* at 41.)

In the weeks following her complaint of harassment, Angevine alleges that Kersten's demeanor toward her changed, becoming abrupt and angry. (Pl.'s LR56.1(b)(3)(A) ¶ 53.) She indicated he threw files on her desk and allowed Straughn to invade her work area. (*Id.* ¶ 99, 100.) WaterSaver denies these allegations. (Def.'s Resp. Pl.'s LR56.1(b)(3)(A) ¶ 99, 100.) On June 3, 2002, Angevine tendered her resignation to WaterSaver. (Def. LR56.1(a) ¶ 5.) WaterSaver contends this was a voluntary action on Angevine's part. (*Id.*) She contends that her work environment had become hostile to the point that she had no choice but to leave employment. (LR56.1(b)(3)(A) ¶ 5.)

Following Angevine's resignation, she filed a complaint with the EEOC on September 30, 2002 alleging discrimination and sexual harassment in violation of Title VII on the basis of sex. (*See* EEOC Charge 210A205211 submitted to the Court on July 15, 2003.) The EEOC subsequently issued its dismissal and notice of right to sue. (Def.'s Mot. Summ J. at 1.)

## DISCUSSION

### I. Motion to Strike

Affidavits will be stricken where they contradict prior sworn testimony. *Hot Wax, Inc., v. Warsaw Chem. Co, Inc.*, 45 F. Supp. 2d 635, 638 (N.D. Ill. 1999). An exception will be made in disregarding contradictory statements where "the affiant gives a plausible explanation for the discrepancy . . . in the affidavit itself." *Beckel v. Wal-Mart Assoc., Inc.*, 301 F.3d 621, 624 (7th Cir. 2002). The court, in deciding a motion for summary judgment, "can only consider evidence that would be admissible at trial under the Federal Rules of Evidence." *Aguilera*, 234 F. Supp. 2d at 845.

### A. Plaintiff's Motion to Strike

Angevine contends that paragraphs 8 and 9 of Kersten's affidavit conflict with his deposition testimony regarding supervision of Angevine by anyone other than himself. The Court agrees with Angevine that the statements are contradictory and therefore strikes paragraphs 8 and 9 of Kersten's affidavit. Angevine requests paragraph 18 of Kersten's affidavit be stricken as less accurately describing the response to Kersten's inquiry with a management association. The Court does not find the language contradictory and denies the motion to strike paragraph 18.

Angevine contends that the language of Straughn's affidavit, paragraph 3, be stricken as contradictory to his deposition testimony regarding supervision of Angevine. The Court agrees the language is contradictory and therefore strikes paragraph 18 of Straughn's affidavit. Angevine also asserts the language of paragraph 9 of Straughn's affidavit, describing the frequency of Straughn's travel, is contradictory to his deposition testimony. The Court disagrees that the language is contradictory and denies the request to strike this paragraph.

Angevine requests that paragraphs 6 and 7 of Schoen's affidavit be stricken as contradictory to his deposition testimony regarding the statements made on the day Angevine resigned. There is some question as to whether these statements are directly contradictory, inasmuch as the Court did not rely on these statements in reaching its decision, it grants Angevine's request and strikes paragraphs 6 and 7 of Schoen's deposition. Angevine also contends that paragraph 9 of Straughn's affidavit be stricken as contradictory to his deposition testimony concerning specific statements made during

the meeting at which Angevine formally tendered her resignation. The Court agrees that the statements are contradictory and grants the motion to strike paragraph 9 of Schoen's affidavit.

Angevine disputes the relevance of statements included in LR56.1(a) facts paragraphs 23, 25 and 38. These statements describe the location where the bet was made, in whose presence, whether it was acted on or at anytime brought up by Straughn with Angevine. The Court finds these statements admissible under FRE 401 as relevant to a determination of hostile environment sexual harassment. Angevine also objects to inclusion of paragraph 38 concerning speculation by WaterSaver as to other reasons for her resignation. The Court finds paragraph 38 irrelevant for purposes of this motion.

**B. Defendant's Motion to Strike**

WaterSaver objects to the inclusion of any alleged statements made by Doug Pretsch in paragraphs 69, 72, 75 and 76 in LR56.1(b)(3)(A) as inadmissible hearsay under FRE 801 and 802. WaterSaver offers no additional analysis of the basis for their hearsay objection. Further, the comments included in those paragraphs relating to whether Straughn bet Pretsch he could arrange for Angevine's presence on Monday night of the PittCon show; whether Straughn had bragged about his influence with Kersten concerning same; whether Straughn had actually disclosed Angevine's sexual preference to Pretsch; and who had actually instigated the bet are not hearsay as they are not offered to prove the truth of the matter asserted. Further, even if this entire paragraph is stricken as hearsay, this information is provided elsewhere in the record. The Court therefore overrules WaterSaver's objection to the admissibility of these paragraphs.

WaterSaver challenges the admissibility of statements in paragraphs 82 and 83 as inadmissible under FRE 401, 801 and 802. (*Id.* ¶¶ 82, 83.) These statements concern what was *not stated* by attendees at the dinner where the bet was made and what was *not put in notes* by Kersten in his interview of Kearns. WaterSaver claims that what is not stated cannot be used as factual evidence and is therefore inadmissible as such. The Court disagrees. Under certain circumstances failure to make a statement can be evidence of state of mind or impeachment of a subsequent statement. The Court, however, will not consider the first and third sentences of paragraph 82 and the first sentence of paragraph 83. (*Id.*)

Paragraph 89 describes Angevine's reaction to sex-based chants directed at women as "appalled." (*Id.* ¶ 89.) WaterSaver "objects to this conclusion being drawn from [Angevine's] conduct" on Bourbon Street from a relevancy perspective. The Court finds paragraph 89 irrelevant for purposes of this motion.

Finally, WaterSaver objects to inclusion of paragraph 100 as drawing a legal conclusion not properly part of Angevine's undisputed facts and therefore not in compliance with the local rules. The Court agrees with WaterSaver's objection that the statements are conclusory and therefore strikes paragraph 100. (*Id.* ¶ 100.)

## II. Summary Judgment

Fed. R. Civ. P. 56(c) provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In determining whether a

genuine issue of material fact exists, the facts and all justifiable inferences therefrom must be construed in the light most favorable to the nonmovant. *Anderson v. Liberty-Lobby Inc.*, 477 U.S. 242, 255 (1986). Where there is no genuine issue for trial, which could lead a reasonable trier of fact to find for the nonmovant, an entry of summary judgment is mandated. *Celotex Corp. v. Catrett,* 477 U.S. 317, 318 (1986).

**A. Hostile Environment Sexual Harassment**

Under Title VII, an employer is prohibited from discriminating against its employees on the basis of sex "with respect to [their] compensation, terms, conditions or privileges of employment." 42 U.S.C. § 2000e-(a)(1). This protection affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult." *Meritor Sav. Bank, FSB, v. Vinson,* 477 U.S. 57, 65 (1986). A hostile work environment exists when the workplace is permeated with discriminatory behavior that is sufficiently severe or pervasive and is both objectively and subjectively offensive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993).

Whether harassment rises to the level of a hostile work environment depends upon the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23.

> "In . . . harassment cases, [this] inquiry requires careful consideration of the context in which particular behavior occurs and is experienced. . . .The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."

*Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1008 (7th Cir. 1999) (quoting *Oncale v. Sundowner Offshore Services, Incorp.*, 523 U.S. 75, 81-82 (1998)). In essence, Title VII does not prohibit *all* workplace verbal or physical harassment. *Oncale*, 523 U.S. at 81.

Where the claim is for sexual harassment based on hostile work environment, a plaintiff must show that: "(1) she was subjected to unwelcome sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability." *Quantock v. Shared Marketing Serves, Inc.*, 312 F.3d 899, 903 (7th Cir. 2002).

Angevine bases her claim of hostile work environment on two incidents involving Mike Straughn ("Straughn"), Regional Sales Manager for WaterSaver. The first occasion of alleged sexual harassment occurred in 2001 when Straughn asked Angevine to date him. (Def.'s Ans. to Pl.'s LR56.1(b)(3)(A) ¶ 11.) This same incident was later described by Angevine in her deposition as a solicitation for sex by Straughn, which she rebuffed. (Pl.'s LR56.1(b)(3)(A) ¶ 26.) This claim is time barred for failure to file an EEOC charge within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1). As such, it is not properly before the court.

In March 2002, Angevine learned while attending the PittCon trade show that Straughn had made a bet at a previous trade show with one of WaterSaver's customers, Doug Pretsch ("Pretsch"). The bet as explained by Pretsch was between he and Straughn that Pretsch could not "get into [Plaintiff's] pants and could not eat her pussy." (Pl.'s LR56.1(b)(3)(A) ¶ 75.) Angevine admits that since the bet incident, there have been no

other instances of sexual harassment of her by Straughn or other WaterSaver employees. (Def.'s LR56.1(a) ¶ 52, Pl.'s LR56.1(b)(3)(A) ¶ 52.) Viewing these facts in a light most favorable to Angevine, the described incident could be characterized as unwelcome verbal conduct of a sexual nature.

The key question in this case is whether this singular incident is sufficiently egregious to constitute a hostile work environment. The Seventh Circuit held that isolated incidents, even where reprehensible, rarely rise to the level of actionable sexual harassment. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 444 (7th Cir. 1994). However, the court cautions that even one act can be actionable sexual harassment if particularly egregious. *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000).

In examining case law where the activity is not pervasive, the courts most frequently find actionable sexual harassment with acts of impermissible touching, overt sexual assault or injury from the "sexual" intrusion. See *Hostetler*, 218 F.3d at 809 (finding a hostile work environment where defendant forced his tongue into plaintiff's mouth and when a later repetition of this was attempted and plaintiff resisted, defendant began to unfasten her bra.); *Smith v. Sheahan*, 189 F.3d 529, 533-34 (7th Cir. 1999) (defendant, with a history of harassing females, verbally abused and physically assaulted plaintiff who required surgery for resulting injury).

In *Quantock*, relied on by Angevine, the court found a genuine issue of material fact with respect to hostile environment sexual harassment where the defendant propositioned the plaintiff, asking her for oral sex, a threesome and finally phone sex. *Quantock*, 312 F.3d at 902. In finding the defendant's infrequent solicitations more

severe than the "occasional vulgar banter . . . deemed to fall short of the hostile workplace standard," the court considered three factors as significant – the defendant's *direct* and repeated requests to the plaintiff for numerous sex acts, the "significant position of authority" occupied by the defendant and the confined work area of the parties. *Id.* at 904.

In contrast, the court found "isolated and innocuous" incidents not rising to the level of discrimination affecting conditions of employment in *Saxton* where plaintiff's supervisor rubbed her thigh, forcibly kissed her and lunged at her from behind shrubbery. *Saxton v. American Telephone & Telegraph Co.* 10 F.3d 526, 528 (7th Cir. 1993). The court held that even though the uninvited advances were likely distressful and uncomfortable, they were insufficient to create an objectively hostile work environment. *Id.* at 534.

Similarly, in *Baskerville*, the plaintiff was subjected to nine instances of verbal harassment by her supervisor including grunts and comments about pretty girls running naked and gestures suggesting masturbation. *Baskerville v. Culligan International Co.,* 50 F.3d 428, 430-31 (7th Cir. 1995) In finding an insufficient basis for hostile work environment, the court considered as mitigating circumstances the fact that the defendant never touched the plaintiff, never explicitly solicited sex with her, made no threats, showed no pornography or exposed himself.

The facts in the present controversy are most like those cases finding no hostile environment sexual harassment. Angevine complains of one isolated incident of sexual harassment. While frequency alone is not dispositive, it is a factor in evaluating whether the environment is so abusive as to affect conditions of plaintiff's employment.

*Hostetler*, 218 F.3d at 808. Unlike those cases finding a hostile work environment, there was no direct assault on Angevine or touching of intimate body parts involved. Beyond learning of its existence from a customer some time after it was made, no attempt was ever made to act on the bet.

Where the Seventh Circuit in *Quantock* held infrequent verbal harassment actionable, the court's decision emphasized the direct propositioning of plaintiff and the position of significant authority the defendant occupied. Here, Straughn's participation in the bet was not in Angevine's presence and Straughn did not have *significant* supervisory authority over Angevine. (LR56.1(a) ¶ 25; LR56.1(b)(3)(A) ¶ 6.) While the bet is clearly an example of crude and offensive behavior, it is not sufficient to constitute actionable sexual harassment.

The parties contest whether Straughn was a co-worker or supervisor of Angevine, a distinction which triggers different standards of employer liability. However, in either case this element of the *prima facie* case is relevant only where actionable sexual harassment is found. Given this Court's conclusion that Angevine has not demonstrated a genuine issue of fact that Straughn's behavior amounted to hostile environment sexual harassment, a determination of the standard of employer liability is unnecessary.

**B. Constructive Discharge**

To state a claim for constructive discharge, the plaintiff must show that working conditions were so intolerable as a result of unlawful discrimination that a reasonable person would be forced to resign. *Rabinovitz,* 89 F.3d at 489. Working conditions "must be even more egregious than the high standard for [a] hostile work environment." *Tutman v. WBBM-TV, Inc./CBS, Inc.,* 209 F.3d 1044, 1049 (7th Cir. 2000).

Constructive discharge was found where plaintiff's boss brandished a pistol to plaintiff's head while making racist remarks. *Tutman,* 209 F.3d at 1050 (quoting *Taylor v. Western & S. Life Ins.Co.*, 966 F.2d 1188, 1191 (7th Cir. 1992)). The Seventh Circuit also found constructive discharge where an employer packed an employee's office contents and moved it to storage, disclosed to the employee a plan for her termination and created a general environment hostile to the employee's religious beliefs. *EEOC v Univ. of Chicago Hosps.*, 276 F.3d 326, 332 (7th Cir. 2000). At the extreme, plaintiff established constructive discharge where the defendant showed a racist, pornographic picture telling her she was hired to perform the depicted act, and grabbed and threatened to kill plaintiff. *Brooms v. Regal Tube Co.,* 881 F.2d 412, 417, 423 (7th Cir, 1989) (rev'd. in part on other grounds).

In cases finding no constructive discharge, the Seventh Circuit has stated "an employee may not be unreasonably sensitive to his working environment . . .unless confronted with an aggravating situation beyond ordinary discrimination." *Brooms*, 881 F.2d at 423. *See, also, Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir. 1998) (finding conditions not intolerable where boorish behavior and promised promotions and raises not given); *Rabinovitz v. Pena,* 89 F.3d 482, 489 (7th Cir. 1996) (stating lower

performance rating and workplace restrictions claimed as constant, mean and humiliating insults were not intolerable conditions); *Saxton*, 10 F.3d at 537 (finding no constructive discharge where plaintiff dissatisfied with resolution to her sexual harassment complaint abandoned her job).

Angevine contends that WaterSaver's failure to address the bet fostered a work environment that sanctioned sexual harassment, making it impossible for her to work with Straughn. Additionally, she claims that Kersten was abrupt and angry with her following the bet complaint, allowing Straughn to invade her work area. And finally, Kersten's reprimand of Angevine for her behavior on Bourbon Street, was in her mind evidence that she no longer had an opportunity to advance at WaterSaver. These circumstances led Angevine to resign.

WaterSaver did conduct an investigation into the bet complaint. Kersten's finding that Straughn had not engaged in sexual harassment because of a lack of corroborating evidence independent of Pretsch, that Straughn had initiated the bet is not tantamount to failing to address Angevine's complaint. It is rather a dispute about the outcome of the investigation. The references to a change in Kersten's demeanor are largely vague and unquantified, with no claim that Angevine's job responsibilities, pay or benefits were affected. (LR56.1(b)(3)(A) ¶ 99.) The record reflects that WaterSaver refused to accept Angevine's resignation following the discussion about her Bourbon Street behavior. (LR56.1(a) ¶ 41.) In fact, they did not consider the conversation to be one of formal discipline. (*Id.* at 42.) Given the interrelatedness between sales and customer service from a functional perspective, Angevine's complaint that Straughn

invaded her work area, without more specific facts, is, likewise, not representative of circumstances considered unbearable.

Angevine's circumstances do not parallel those depicted in *Taylor, Brooms or EEOC v. Univ. of Chicago Hosps.*, where claims for constructive discharge were upheld. *Taylor*, 966 F.2d at 1191; *Brooms*, 881 F.2d at 423; *EEOC v. Univ. of Chicago Hosps.*, 276 F.3d at 332. The complained of discrimination and office tension that followed are more like the boorish behavior depicted in *Lindale* and the supervisor – subordinate friction in *Rabinovitz. Lindale*, 145 F.3d at 956; *Rabinovitz*, 89 F.3d at 489.

In total, the environment described by Angevine does not rise to a level of objective hostility. Given the failure of Angevine to meet the standard for hostile environment sexual harassment, by default her claim of constructive discharge, requiring a higher standard of egregious behavior, must also fail.

**C. Retaliation**

A prerequisite to filing suit under Title VII is the filing of an EEOC charge concerning the aggrieved actions in an attempt to resolve disputes without litigation. *Chambers v. American Trans Air Inc.,* 17 F.3d 998, 1003 (7th Cir. 1994). A plaintiff may pursue a claim for retaliation under Title VII that is "not explicitly included in the EEOC complaint only if her allegations fall within the scope of the charges contained in the EEOC complaint." *Cheek v. Peabody Coal Co.,* 97 F.3d 200, 202 (7th Cir. 1996). To ascertain whether a subsequent action falls within the scope of the earlier EEOC complaint, a court considers whether the charges are "like or reasonably related to those of the EEOC complaint." *Id.* If the charges are related, the court then asks "whether the

current claim could reasonably have been developed from the EEOC's investigation of the charges before it." *Id.*

Angevine's EEOC charge alleges discrimination and harassment in violation of Title VII on the basis of sex. The text portion of the complaint does not reference directly, or by inference, any retaliatory action by her former employer. The complaint specifically requests the charging party to check the appropriate boxes indicating the cause of the discrimination. The EEOC charge form explicitly provides "retaliation" as an option under cause of discrimination. Angevine has checked only the box for sex. Notably, the box for retaliation was left unmarked. (*See* EEOC Charge 210A205211 submitted to the Court on July 15, 2003.)

In *O'Rourke,* discussing *Steffan v. Meridian Life Ins. Co.,* 859 F.2d 534, 544 (7th Cir. 1988), the Seventh Circuit held that retaliation and age discrimination are unrelated as a matter of law. *O'Rourke v. Continental Cas. Co.,* 983 F.2d 94, 97 (7th Cir. 1993). The court explained that retaliation is essentially the "adverse consequence[s] deliberately attached to the exercise of a right protected by law." *Id.* at 97. Where the charge does not include the exercise of a protected right or any resulting adverse consequence, retaliation cannot be presumed. *Id.* As the claim of retaliation is not like or reasonably related to the discrimination charged, the Court finds that her retaliation claim is not within the scope of the charge, and therefore, Angevine is barred from raising it in this litigation.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendant, WaterSaver Faucet

Company's Motion for Summary Judgment as to Rebecca Angevine's Title VII claims [18-1]. The Court grants in part and denies in part Angevine's Motion to Strike [25-1]. The Court grants in part and denies in part WaterSaver's Motion to Strike. The Court hereby terminates this case. This is a final and appealable order.

**SO ORDERED**

**DATE:** 9/4/03

**ENTERED:**

**HON. RONALD A. GUZMAN**
**United States Judge**